**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES YANDOW,**

                **Plaintiff,**            **1:09-cv-903**
                                                        **(GLS\DRH)**

                  v.

**G. LAWRENCE KRONAU,** Town Justice for the Town of Poestenkill, New York; **NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES; DAVID J. SWARTS,** Commissioner of the NY Department of Motor Vehicles,

                        **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Redlich Law Firm | WARREN REDLICH, ESQ. |
| 255 Washington Avenue Ext. | |
| Suite 108 | |
| Albany, NY 12205 | |
| | |
| **FOR THE DEFENDANTS:** | |
| *State Defendants* | |
| HON. ERIC T. SCHNEIDERMAN | ADAM SILVERMAN |
| New York State Attorney General | Assistant Attorney General |
| The Capitol | |
| Albany, NY 12224 | |
| | |
| *G. Lawrence Kronau* | |
| Weatherwax Road Law Offices | PATRICK J. TOMASELLI, ESQ. |
| P.O. Box 97 | |
| Poestenkill, NY 12140 | |

**Gary L. Sharpe**

**District Court Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff James Yandow brings this action under 42 U.S.C. § 1983 against Gregory T. Kronau, Town Justice for the Town of Poestenkill, the New York State Department of Motor Vehicles (DMV), and David J. Swarts, Commissioner of the DMV.  (*See* Am. Compl., Dkt. No. 10.)  Yandow alleges that the suspension of his driver's license pursuant to New York's Prompt Suspension Law[1] violated his rights to procedural and substantive due process under the Fourth and Fourteenth Amendments.  (*See id.*)  Pending are Yandow's motion for summary judgment, and the DMV and Swarts's cross-motion for summary judgment.  (Dkt. Nos. 21, 22.)  For the reasons that follow, Yandow's motion is denied, and the DMV and Swarts's cross-motion is granted.

## II. Background

### A. New York's Prompt Suspension Law

"In an effort to reduce the incidence of drunk driving on New York's

---

[1] N.Y. VEH. & TRAF. LAW § 1193 (2)(e)(7).

2

roadways, the State Legislature enacted the prompt suspension law ... which under certain circumstances mandates the suspension of a driver's license to operate a motor vehicle pending prosecution for driving while intoxicated." *Pringle v. Wolfe*, 88 N.Y.2d 426, 429 (N.Y. 1996). Specifically, at the time a person charged with driving while intoxicated (DWI) is arraigned, the Prompt Suspension Law requires the court to suspend that person's license if (1) the accusatory instrument is sufficient on its face, and (2) there is reasonable cause to believe that the driver operated a motor vehicle with a blood alcohol level (BAC) of at least 0.08 as shown by a chemical analysis of the driver's blood, breath, urine, or saliva. *See* N.Y. VEH. & TRAF. LAW § 1193(2)(e)(7)(b). If the court finds that these criteria are satisfied, "a prima facie showing for license suspension has been established." *Pringle*, 88 N.Y.2d at 432. However, before the driver's license can be suspended, he must be given an "opportunity to make a statement regarding [the two criteria] and to present evidence tending to rebut the court's findings." N.Y. VEH. & TRAF. LAW §1193(2)(e)(7)(b). This pre-suspension proceeding is known as a "*Pringle* hearing."

If suspension is ultimately deemed appropriate, the court is required

3

to suspend the driver's license pending prosecution.  However, if a driver can demonstrate "extreme hardship," the Vehicle and Traffic Law (VTL) authorizes a "hardship privilege" which permits the driver to operate a vehicle for such limited purposes as traveling to or from employment, school, or necessary medical treatment.  *See id.* § 1193(2)(e)(7)(e).  The VTL also provides that thirty days after a license is suspended, an eligible holder may be issued a pre-conviction conditional license (PCCL), which grants the holder limited driving privileges pending prosecution.  *See id.* §§ 1193(2)(e)(7)(d), (e), 1196(7)(a); 15 N.Y.C.R.R. § 134.18(a).  Neither the hardship privilege nor the PCCL is valid for the operation of commercial motor vehicles.[2]  *See* N.Y. VEH & TRAF LAW § 1193(2)(e)(7) (d).

---

[2]The New York State Legislature amended the VTL in 2007 to provide that when a defendant's license is suspended pending prosecution, neither a PCCL nor a hardship privilege shall be valid for the operation of a commercial vehicle.  *See* N.Y. VEH. & TRAF. LAW §§ 1193(2)(e)(7)(d), (e); *see also* Silverman Aff., Ex. B, 2007 Bill Amending Prompt Suspension Law, Dkt. No. 22:3.)  As defendants explain,

> [t]his legislation was passed in order to bring New York State into compliance with the Motor Carrier Safety Improvement Act of 1999 (MCSIA) and the Commercial Motor Vehicle Safety Act of 1986 (CMVSA) so that the State of New York could avoid losing both Federal highway funding as well as its [commercial driver's license] certification.

(Defs. Mem. of Law at 7, Dkt. No. 22:4 (citing Silverman Aff, Ex. B, 2007

4

If a driver is sentenced for DWI, any hardship privilege or PCCL in effect at that time is terminated. *See* 15 N.Y.C.R.R. § 134.18(d). However, if the driver is eligible, the sentencing court may, in its discretion, grant him a twenty-day stay of the driver's license suspension or revocation required under the VTL. *See* N.Y. VEH. & TRAF. LAW § 1193(2)(d)(1), (2). According to defendants, and as Yandow appears to concede, "[t]he purpose of this short and temporary stay is to give the driver an opportunity to enroll in the Drinking Driver Program (DDP) and to obtain a conditional license before any license suspension or revocation takes place." (Defs. SMF ¶ 17, Dkt. No. 22:1; Pl. Mem. of Law at 8, Dkt. No. 21:3.) The DDP is available only to those persons convicted of alcohol and/or drug related offenses, and only those convicted persons who qualify for and enroll in the DDP are eligible for a conditional license. (*See* Defs. SMF at ¶ 17, Dkt. No. 22:2; N.Y. VEH. & TRAF. LAW § 1196(1), (4), (7).) Further, if a convicted driver is not eligible for DDP, or is eligible and elects not to enroll in DDP, that driver's license will be suspended or revoked as set forth in VTL § 1193(2)(a) or (b). (*See* Defs. SMF ¶ 20, Dkt. No. 22:2; N.Y. VEH. & TRAF. LAW § 1196(7).) Defendants contend that if a convicted driver "is not

---

Bill Amending Prompt Suspension Law at 5, Dkt. No. 8:3).)

5

eligible for DDP or is eligible and elects not to enroll in DDP that [driver's] license will be suspended or revoked as set forth in VTL Section 1193(2)(a) or (b)," and that "[s]uch convicted individuals will have no driving privileges whatsoever during the required period of license suspension or revocation." (Defs. SMF ¶ 20, Dkt. No. 22:1.)

**B.     Facts**[3]

On June 8, 2009, Yandow was stopped by Rensselaer Sheriff's Deputy Zachary J. Sharpe and subsequently charged with DWI in violation of VTL §1192.  On July 27, pursuant to the Prompt Suspension Law, Town Justice Lawrence Kronau requested Yandow's license.  Yandow's counsel requested and was granted an opportunity to contest the request at a *Pringle* hearing.

On July 30, a *Pringle* hearing was held at the Poestenkill Town Court, at which time Judge Kronau made findings that the accusatory instruments were facially sufficient, and that there was reasonable cause to believe that

---

[3]The facts are drawn from the pleadings, the parties' statements of material facts, and the relevant affidavits.  (*See* Dkt. Nos. 10, 21, 22.) Though the facts here are largely undisputed, the parties are reminded of their obligation under Local Rule 7.1 to respond to an opposing party's statement of material facts.  N.D.N.Y. L.R. 7.1(a)(3).  Failure to abide by that obligation in the future could result in the court deeming any unaddressed facts admitted.  *See id.*

Yandow operated a motor vehicle with a BAC in excess of 0.08.  Yandow claims that Judge Kronau did "not allow any questioning of Deputy Sharpe regarding the blood alcohol test or how the stop was conducted."  (Pl. SMF ¶ 8, Dkt. No. 21:1.)  At the conclusion of the hearing, Judge Kronau issued an order suspending Yandow's license to operate a motor vehicle pending the outcome of the criminal trial.  As a result of the suspension, Yandow lost his Commercial Driver License (CDL) privileges pending prosecution of the DWI charge.

On August 6, 2009, Yandow commenced this action against defendants, alleging that the suspension of his CDL pursuant to the Prompt Suspension Law violated his procedural and substantive due process rights.  (*See* Compl, Dkt. No. 1; *see also* Am. Compl., Dkt. No. 10.)  On December 18, 2009, this court denied Yandow's motion for preliminary injunction.  (Dkt. No. 14.)  On April 30, 2010, Yandow filed the current motion for summary judgment, seeking the grant of "a permanent injunction against [d]efendants precluding any pre-conviction suspension against [him] on due process grounds."  (Dkt. No. 21; *see also* Am. Compl. at 5, Dkt. No. 10.)  Defendants DMV and Swarts subsequently cross-moved for summary judgment.  (Dkt. No. 22.)

7

### III. Standard of Review

The standard for judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### IV. Discussion

**A.  Judicial Immunity**

"Judges are granted absolute immunity for acts taken pursuant to their judicial power and authority ...." *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988). Because Yandow's claims against Judge Kronau are based on acts taken pursuant to the Judge's judicial power and authority, the court sua sponte dismisses those claims. *McCluskey v. N.Y. State Unified Court Sys.*, No. 10-CV-2144, 2010 WL 2558624, at *3 (E.D.N.Y. June 17, 2010) ("Courts may ... dismiss sua sponte claims that are barred by sovereign immunity or judicial immunity." (citing *Ex rel the Camardo Law Firm, P.C. v. Dep't of the Army*, No. 5:09-CV-654, 2010 WL 1935868, at *2 (N.D.N.Y. May 11, 2010)).

**B.  Procedural Due Process**

8

Yandow claims that he was deprived of procedural due process at his *Pringle* hearing, arguing that because he was not permitted to question the arresting officer as to the circumstances surrounding his stop and arrest, as well as how the breath testing was conducted, he was not afforded a "meaningful hearing" as discussed in *Krimstock v. Kelly*, 306 F.3d. 40 (2d Cir. 2002). (*See* Am. Compl. ¶ 36, Dkt. No. 10.) The court disagrees.

As already explained, Judge Kronau found at the *Pringle* hearing that the accusatory instruments charging Yandow were facially sufficient, and that there was reasonable cause to believe that Yandow operated a motor vehicle with a blood alcohol level of at least 0.08. Yandow was then given the opportunity to make a statement as to those findings and to present evidence to rebut them. For the reasons articulated by the New York Court of Appeals in *Pringle*, this is "all the process that [was] constitutionally due." 88 N.Y.2d at 431-35 (citations omitted), *cert denied*, 519 U.S. 1009 (1996).[4]

---

[4]The *Pringle* court summarized its findings as follows:

> [T]hough the private interest affected by the prompt suspension law is substantial, the severity of the license suspension is mitigated by its temporary duration, the availability of a conditional license and hardship relief, and the significant protection of a presuspension judicial hearing, which militates heavily in favor of the statute's constitutionality. Further weighing against the driver's interest in maintaining his

And the fact that Yandow's counsel may have been precluded from questioning the arresting officer as to issues relating to the circumstances of the stop and arrest and how the breath testing was conducted does not compel a contrary conclusion. "[A] *Pringle* hearing is a civil administrative proceeding which runs parallel to the criminal proceedings." *Vanderminden v. Tarantino*, 60 A.D.3d 55, 59 (3d Dep't 2009) (citing, inter alia, *Pringle*, 88 N.Y.2d at 435), *leave denied*, 12 N.Y.3d 708 (N.Y. 2009). It does not "requir[e] the same level of due process protection as a criminal trial," and it is not "an opportunity for free-wheeling discovery regarding the criminal matter." *Id.* at 59-60 (citations and internal quotation marks omitted). Thus, as New York courts have correctly observed, while the issues Yandow's counsel sought to explore "are relevant ... at a criminal trial, and may ultimately bear on the determination of criminal culpability, they are beyond the scope of a *Pringle* hearing," and therefore need not be addressed in that context to satisfy due process requirements. *Id.* at 59 (citation omitted); *see also, e.g.*, *New York v. Mango*, 24 Misc. 3d 660 (N.Y.

---

> license are the slight risk of an erroneous deprivation and the overriding State interest in the prompt removal of a safety hazard from its streets.

*Pringle*, 88 N.Y.2d. at 435 (citations and internal quotation marks omitted).

10

Sup. Ct. 2009).

Yandow's argument that this construction fails to comport with the "meaningful hearing requirement discussed in *Krimstock*" is unavailing. (*See* Pl. Mem. of Law at 6, Dkt. No. 21:3; Pl. Reply at 1, Dkt. No. 23.) In *Krimstock*, the Second Circuit examined the constitutionality of a New York City ordinance that permitted the civil forfeiture of vehicles driven by DWI defendants at the time of their arrest without first affording those defendants any opportunity for a post-judgment, pre-seizure hearing. *See* 306 F.3d at 43-44.[5] Ultimately, the Circuit found the ordinance deficient on procedural due process grounds, holding that individuals whose vehicles were seized under the ordinance were entitled to a prompt retention hearing that "enable[s] [them] to test the probable validity of continued deprivation of their vehicles, including the City's probable cause for the initial warrantless seizure." *Id.* at 69.

Based on this holding, Yandow contends that refusal to permit questioning as to issues relating to the existence of probable cause for his

---

[5] As the Circuit explained, "[t]he City maintain[ed] possession of the[] vehicles in the hope of one day gaining title to them by prevailing in civil forfeiture proceedings[, which] ... generally await[ed] the resolution of criminal charges and [could] take months or even years to be finalized." *Krimstock*, 306 F.3d at 43-44.

11

stop and arrest is constitutionally infirm. As defendants correctly argue, Yandow's reliance in this regard is misplaced. As the Circuit reiterated in *Krimstock*, "[d]ue process is inevitably a fact-intensive inquiry." *Id.* at 51 (citation omitted). Unlike some legal rules, it "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* (quoting *Connecticut v. Doehr*, 501 U.S. 1, 10 (1991)). The "'timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved.'" *Id.* (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)). Here, the competing interests at play, and the nature of and circumstances surrounding the Prompt Suspension Law's temporary license suspension scheme, though arguably similar in the broadest of terms, differ considerably from the interests implicated and the circumstances involved in *Krimstock.* In light of these significant differences—the majority of which are discussed in defendants' submission, (*see* Defs. Mem. of Law at 9-13, Dkt. No. 22:4), and none of which are even addressed by Yandow—the court is not persuaded that *Krimstock* should be read to expand *Pringle* hearings to include an inquiry as to whether probable cause supported a DWI defendant's stop and arrest. In the court's view, to do so "would effectively convert the license

12

suspension proceeding into a trial on the merits of the underlying criminal charge," and "would subvert the State's compelling interest in promoting highway safety." *Pringle*, 88 N.Y.2d at 435 (citing *Mackey v. Montrym*, 443 U.S. 1, 18 (1979) ("The summary and automatic character of the suspension sanction available under the statute is critical to attainment of [its public safety] objectives.")).

Accordingly, Yandow's motion for summary judgment as to his procedural due process claim is denied, defendants' cross-motion as to that claim is granted, and the claim is dismissed.

**C.     Substantive Due Process**

Yandow also claims that the Prompt Suspension Law violates his substantive due process rights to maintain his driver's license and to "engag[e] in his chosen employment," contending that the law is not "narrowly tailored" to the State's "compelling" roadway-safety interest. (*See* Am. Compl. ¶¶ 33, 35, Dkt. No. 10; Pl. Mem. of Law at 6, 9, Dkt. No. 21:3.)   As defendants correctly observe, Yandow misapprehends the applicable standard of review and fails to establish any basis to conclude that the Prompt Suspension Law violates his substantive due process rights.

13

"In assessing whether a government regulation impinges on a substantive due process right, the first step is to determine whether the asserted right is 'fundamental.'" *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003) (emphasis omitted). "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460-61 (2d Cir. 1996) (citations and internal quotation marks omitted). "Where the right infringed is fundamental, strict scrutiny is applied to the challenged governmental regulation." *Leebaert*, 332 F.3d at 140 (citation omitted). To survive strict scrutiny, the regulation must be "narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citation and internal quotation marks omitted). However, where the claimed right is not fundamental, the government regulation "need not be perfectly tailored, and the [c]ourt should not indulge in speculation as to whether the law could have been better conceived." *Vt. Assembly of Home Health Agencies v. Shalala*, 18 F. Supp. 2d 355, 368 (D. Vt. 1998) (citing *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997)). Rather, under such circumstances, the challenged regulation is subject to only "rational-basis review," which is satisfied where the

14

regulation is "reasonably related to a legitimate state objective." *Immediato*, 73 F.3d at 461 (citations omitted). Or in other words, under rational basis review, the challenged law "will not be held unconstitutional if its wisdom is at least fairly debatable and it bears a rational relationship to a permissible state objective." *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063 (2d Cir. 1989). Ultimately, then, to show that a legislative act is unconstitutional, a "challenger must establish that no set of circumstances exists under which the [a]ct would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001) ("The burden falls to the party attacking the statute as unconstitutional to negative every conceivable basis which might support it." (citation and internal quotation marks omitted)). As noted above, Yandow argues that the Prompt Suspension Law violates his rights to maintain a driver's license and to engage in his chosen profession because it is not "narrowly tailored" to the State's admittedly "compelling" roadway-safety interest. This argument assumes, without explanation or citation to authority, that the rights asserted by Yandow are "fundamental" under the Fourteenth Amendment. This assumption is incorrect. It is true that "the right to hold specific private employment and to follow a chosen profession"

15

is protected under the Fourteenth Amendment. *Greene v. McElroy*, 360 U.S. 474, 492 (1959) (citations omitted). It is clear, however, that such a right is not one of "fundamental" dimension. S*ee id.* (explaining that the right is shielded from "*unreasonable* governmental interference" (emphasis added)); *Medeiros v. Vincent*, 431 F.3d 25, 32 (1st Cir. 2005) ("The right to 'make a living' is not a 'fundamental right,' for equal protection or substantive due process purposes." (citing *N.Y. State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1309-12 (2d Cir. 1994)). Nor does the issuance of a driver's license give rise to a fundamental right. Rather, like the right to hold specific employment, the right to maintain a driver's license is substantial and entitled to due process protection, but has not been recognized as the type "implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Immediato*, 73 F.3d at 460-61 (citations and internal quotation marks omitted); *see, e.g.*, *Haselton v. Amestoy*, No. 1:03-CV-223, 2003 WL 23273581, at *2 (D. Vt. Mar. 16, 2004) ("Indeed, the right of an individual to drive a vehicle is not a fundamental right; it is a revocable privilege that is granted upon compliance with statutory licensing provisions." (citations and internal quotation marks omitted)).

16

Thus, at the threshold—and contrary to Yandow's misguided contentions—Yandow's substantive due process challenge is governed by a rational basis standard of review, not strict scrutiny. And under that standard, the Prompt Suspension Law clearly passes muster. Indeed, there is no question that the law is at least reasonably related to what Yandow admits is the State's "compelling" interest in enhancing highway safety. There can also be no question that the heightened restrictiveness with which the Prompt Suspension Law applies to commercial drivers—drivers who generally operate larger vehicles, for longer periods, for greater distances, and with greater frequency than non-commercial drivers—also bears a rational relationship to that legitimate safety-focused interest. In addition, and as defendants highlight, in placing these harsher restrictions on commercial drivers, the legislature pointed to its interest in further bringing New York State into compliance with the Motor Carrier Safety Improvement Act of 1999 and the Commercial Motor Vehicle Safety Act of 1986, which was necessary to "avoid the potential loss of [federal] highway funding and the potential for CDL decertification," (Silverman Aff., Ex. B at 5, N.Y. State Assembly Mem. in Support of Legislation, Dkt. No. 22:3), an interest that is also unquestionably legitimate. Accordingly, it is

17

clear that the Prompt Suspension Law survives the applicable scrutiny.

Yandow's argument that the law is not "narrowly tailored" does not alter that conclusion.  The thrust of Yandow's narrow tailoring argument is that the VTL's statutory scheme can operate to impose fewer initial driving restrictions on "guilty" drivers (those who plead "guilty" to a DWI charge) than it does on "not guilty" drivers (those who plead "not guilty" to a DWI charge), therefore permitting "guilty" and "more dangerous" drivers broader driving privileges than "not guilty" and "less dangerous" drivers.  (*See* Am. Compl. ¶ 35, Dkt. No. 10; Pl. Mem. of Law at 8-9, Dkt. No. 21:3.)  More specifically, Yandow points to the fact that a driver who pleads guilty to DWI charges can, as discussed above, be granted a twenty-day stay of the suspension or revocation of his license during which full driving privileges remain, and can obtain conditional driving privileges if he enrolls in the DMV's Drinking Driver Program.  (*See* Pl. Mem. of Law at 8-9, Dkt. No. 21:3.)  Yandow contrasts this scenario with the kind faced by a driver who pleads not guilty, specifically highlighting that such a driver faces an immediate suspension at arraignment unless he can obtain a hardship privilege, which permits driving only to and from work.  (*See id.* at 9.)  Only after thirty days, Yandow continues, can the "not guilty" driver obtain

conditional licence privileges with a PCCL.  (*See id.*)  According to Yandow, "this scheme, which allows guilty defendants to drive unabated for 20 days and then continue driving with some restrictions, while barring not-guilty defendants from driving for more than 30 days or more, cannot meet the *narrow tailoring restrictions* of the Fourteenth Amendment."  (*Id.* (emphasis added).)

      This argument fails.  While the alleged disparities cited by Yandow *could* suggest that the VTL's suspension scheme is not "narrowly tailored" as required under strict scrutiny review, that standard of review is, as already explained above, inapplicable here.  Thus, even assuming that the Prompt Suspension Law is not "perfectly tailored" or could have been "better conceived," the court is compelled under rational basis review to avoid entertaining such speculation, *see Shalala*, 18 F. Supp. 2d at 368, and to uphold the law unless it is shown that there exists no set of circumstances under which the law could be valid, *see Salerno*, 481 U.S. at 745.  As already demonstrated, Yandow has failed to make that showing and his narrow tailoring argument is fatally misguided.

      Accordingly, because the Prompt Suspension Law's provisions relating to both commercial and non-commercial drivers are rationally

19

related to legitimate state interests, Yandow's motion for summary judgment as to his substantive due process claim is denied, defendants' cross-motion as to that claim is granted, and the claim is dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Yandow's claims against defendant Judge G. Lawrence Kronau are sua sponte **DISMISSED**; and it is further

**ORDERED** that Yandow's motion for summary judgment (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED** that Swarts and the DMV's cross-motion for summary judgment (Dkt. No. 22) is **GRANTED** and Yandow's complaint (Dkt. No. 10) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 24, 2011
Albany, New York

*[signature]*
United States District Court Judge